**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO; the Commission of La Cosa Nostra; Anthony Salerno, also known as Fat Tony; Matthew Ianniello, also known as Matty the Horse; Anthony Provenzano, also known as Tony Pro; Nunzio Provenzano, also known as Nunzi Pro; Anthony Corallo, also known as Tony Ducks; Salvatore Santoro; Christopher Furnari, Sr., also known as Christie Tick; Frank Manzo; Carmine Persico, also known as Junior, also known as The Snake; Gennaro Langella, also known as Gerry Lang; Philip Rastelli, also known as Rusty; Nicholas Marangello, also known as Nicky Glasses; Joseph Massino, also known as Joey Messina; Anthony Ficarotta, also known as Figgy; Eugene Boffa, Sr.; Francis Sheeran; Milton Rockman, also known as Maishe; John Tronolone, also known as Peanuts; Joseph John Aiuppa, also known as Joey**

O'Brien, also known as Joe Doves, also known as Joey Aiuppa; John Phillip Cerone, also known as Jackie the Lackie, also known as Jackie Cerone; Joseph Lombardo, also known as Joey the Clown; Angelo LaPietra, also known as The Nutcracker; Frank Balistrieri, also known as Mr. B; Carl Angelo DeLuna, also known as Toughy; Carl Civella, also known as Corky; Anthony Thomas Civella, also known as Tony Ripe; General Executive Board, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; Jackie Presser, General President; Weldon Mathis, General Secretary–Treasurer; Joseph Trerotola, also known as Joe T, First Vice President; Robert Holmes, Sr., Second Vice President; William J. McCarthy, Third Vice President; Joseph W. Morgan, Fourth Vice President; Edward M. Lawson, Fifth Vice President; Arnold Weinmeister, Sixth Vice President; John H. Cleveland, Seventh Vice President; Maurice R. Schurr, Eighth Vice President; Donald Peters, Ninth Vice President; Walter J. Shea, Tenth Vice President; Harold Friedman, Eleventh Vice President; Jack D. Cox, Twelfth Vice President; Don L. West, Thirteenth Vice President; Michael J. Riley, Fourteenth Vice President; Theodore Cozza, Fifteenth Vice President; Daniel Ligurotis, Sixteenth Vice President; and Salvatore Provenzano, also known as Sammy Pro, Former Vice President, Defendants,

Teamsters for a Democratic Union and Teamster Rank and File Education and Legal Defense Foundation, Movants–Appellants,

Michael H. Holland, Election Officer, IBT, Appellee.

No. 689, Docket 91–6250.

United States Court of Appeals, Second Circuit.

Argued Nov. 22, 1991.

Decided June 30, 1992.

Edward T. Ferguson, III, Asst. U.S. Atty., S.D.N.Y., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Richard W. Mark, Asst. U.S. Atty., S.D.N.Y., of counsel), for plaintiff-appellee.

Paul Alan Levy, Washington, D.C. (Alan B. Morrison, David C. Vladeck, Public Citizen Litigation Group, Washington, D.C., Helen Hershkoff, Steven Shapiro, American Civil Liberties Union Foundation, Daniel E. Clifton, Lewis, Greenwald, Kennedy, Lewis, Clifton & Schwartz, New York City, of counsel), for movants-appellants.

Barbara J. Hillman, John J. Sullivan, Washington, D.C., for appellee.

Susan M. Jennik, Brooklyn, N.Y., for Ass'n for Union Democracy, amicus curiae.

Before: PRATT, MAHONEY, and McLAUGHLIN, Circuit Judges.

J. DANIEL MAHONEY, Circuit Judge:

Nonparty movants-appellants Teamsters for a Democratic Union ("TDU") and Teamster Rank and File Education and Legal Defense Foundation ("TRF") appeal from an order of the United States District Court for the Southern District of New York, David N. Edelstein, *Judge,* entered October 4, 1991. That order denied an application by TDU and TRF for a preliminary injunction, and thereby affirmed a ruling of the Election Officer appointed pursuant to a certain consent decree (the "Consent Decree") relating to the affairs of defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO (the "IBT"). The Election Officer had ordered TDU and TRF to file reports identifying contributors who had given them more than $100 with a view, *inter alia,* to disclosure of those reports to candidates in the 1991 IBT election for national and regional offices.

We conclude that the Election Officer exceeded the authority provided to him by the Consent Decree and the All Writs Act, 28 U.S.C. § 1651(a) (1988), and accordingly reverse.

### Background

The facts underlying the litigation from which this appeal arises have been exhaustively set forth elsewhere. *See, e.g., United States v. IBT ("Yellow Freight"),* 948 F.2d 98, 100 (2d Cir.1992), *petition for cert. filed,* 60 U.S.L.W. 3843 (U.S. June 16, 1992) (No. 91–1938); *United States v. IBT ("Election Rules Decision"),* 931 F.2d 177, 180–82 (2d Cir.1991); *United States v. IBT,* 905 F.2d 610, 612–13 (2d Cir.1990). We set forth only a summary adequate for present purposes.

In brief, the government initiated litigation that was intended to rid the IBT of the baneful influence of organized crime and which culminated in the entry of the Consent Decree on March 14, 1989. Among other things, the Consent Decree was designed to ensure an open and fair election in 1991 for national and regional IBT offices. The Election Officer, charged under the Consent Decree with the supervision of that election, promulgated certain rules for that purpose (the "Election Rules") effective April 27, 1990. *See Election Rules Decision,* 931 F.2d at 184–90 (approving Election Rules as modified). On August 14, 1991, the Election Officer issued an Advisory on Campaign Contributions and Disclosure (the "Campaign Advisory"). The present appeal results from efforts of the Election Officer to regulate, in accordance with provisions of the Campaign Advisory, the IBT election-related conduct of TDU and TRF.

TDU was founded in 1976 as a caucus of rank-and-file IBT members concerned about "corruption, lack of leadership accountability to the membership, undemocratic procedures, and unfair, ineffective, and even ill-intentioned bargaining and grievance adjustment strategies" within the union. TRF was formed in 1977 to perform educational and legal services in support of TDU. Many supporters of TDU and TRF desire to keep their support confidential. According to TDU and TRF, attempts at union reform have often met with retaliation in the form of "brutal physical attacks, arson, threats of physical harm, and economic reprisals by both union agents, and by employers." TDU and TRF insist that these dangers continue to exist today, despite the continuing efforts of the government, the court-appointed officers, and the federal courts.

Breaking with its prior practice of not endorsing specific candidates, TDU endorsed Ron Carey for the office of general president in the 1991 IBT election. Carey was one of three candidates for that position, and ultimately the winner. TDU advocated Carey's election by various means, including printing articles in TDU's newspaper and communicating with TDU members. TRF provided legal support for this effort.

Article X, section 2 of the Election Rules required that campaign financing and expenditure reports be filed by "[e]ach nominated candidate for International office" on the ninetieth and thirtieth day "prior to the commencement of the [1991] International election," and on the seventh day following its conclusion. The Campaign Advisory specified these dates as September 11 and November 10, 1991, and seven days after the Election Officer "orally announce[d] the election results." The Campaign Advisory also required the filing of an additional, final report by January 17, 1992. The Election Rules specifically provided that:

> Each nominated candidate for International office shall have the right to inspect, but not copy, the other candidates' campaign financing and expenditure reports at the office of the Election Officer in Washington, D.C., twice before the International election and once after, by appointment made with the Election Officer.

Election Rules, Art. X, § 2(e).

The Campaign Advisory spawned the controversy underlying this appeal by requiring that independent committees, as well as nominated candidates, file the specified financial reports subject to inspection by nominated candidates. An independent committee was "defined as any person or entity, not controlled by a candidate or slate, who accepts campaign contributions ... or makes any expenditure where the purpose, object, or foreseeable effect of that contribution or expenditure is to influence the election of an [IBT] candidate or candidates." TDU and TRF were both specifically identified in the Campaign Advisory as independent committees subject to the reporting requirements.

The rationale stated in the Campaign Advisory for requiring such disclosure was that in its absence, "the possibility exists that the campaign contribution limitations of the *Consent Order* and the *Rules* may be breached." These limitations are directed primarily at precluding the financing of the 1991 IBT election by employers, the IBT, or other labor organizations.

On September 16, 1991, TDU and TRF wrote to the Election Officer stating that they would intentionally fail to file in order to trigger a protest and a formal review by the Election Officer and the Independent Administrator, another court-appointed officer who oversees implementation of the Consent Decree. The Election Officer responded by letter dated September 18, 1991 that failure to file could result in his disqualifying TDU and TRF from further participation in the 1991 IBT election, and that he was "not limited in the remedies [he might] impose to merely requiring that the reports be filed." By letter dated September 23, 1991, TDU and TRF stated that they would prepare and file the first reports while pursuing an injunction in the district court against their disclosure.

On October 1, 1991, TDU and TRF moved in the district court for a preliminary injunction "barring the Election Officer from demanding that TDU and TRF furnish him, for disclosure to the union leadership, with forms bearing the names of their supporters and associated [sic], or from disclosing to those leaders such forms as may already have been furnished pursuant to the Election Officer's order." The district court held a hearing on the motion the next day. The hearing was adjourned to October 4 for the ostensible purpose of hearing TDU and TRF witnesses concerning credible fears of retaliation as a result of disclosure of the identity of TDU and TRF supporters. On October 4, however, when TDU and TRF apparently produced nine witnesses who were prepared to testify, the district court did not hear any evidence.

The arguments and colloquy at the October 4 hearing were directed primarily to the need for "an open democratic process" whereunder the financial reports of TDU and TRF would be available to nominated candidates for IBT office on a parity with the availability of the reports of those candidates. TDU and TRF represented that they would provide any information needed by the Election Officer to investigate possible violations of the Election Rules. Rather than hear testimony concerning fears of

retaliation, the district court undertook to protect the rights of TDU and TRF contributors by (1) requiring that the names of those who examine the filed reports of TDU and TRF be recorded; (2) promising to investigate those persons under oath if intimidation should occur; and (3) requiring the appointment of sergeants-at-arms for all IBT locals. The court also directed the government to empanel a grand jury to investigate any allegations of intimidation or retaliation. The court denied the preliminary injunction sought by TDU and TRF.

TDU and TRF appealed to this court and sought a stay pending appeal, which we denied on October 8, 1991 while ordering an expedited appeal. In the meantime, the Election Officer began to permit inspection of the initial reports. On November 20, 1991, the panel hearing the appeal stayed the order of the district court pending argument of the appeal on November 22, 1991. Following oral argument on November 22, 1991, we further stayed the district court's order pending disposition of the appeal. Specifically, we relieved TDU and TRF of the obligation to file further reports and directed the Election Officer not to make any further disclosure of information contained in reports already filed by TDU and TRF with him.

## Discussion

The controversy prompting this appeal has been substantially mooted, as a practical matter, by the conclusion of the 1991 IBT election, in which Ron Carey was elected general president. *See United States v. IBT ("Commercial Carriers")*, 968 F.2d 1472, 1475 (2d Cir.1992); *United States v. IBT*, 964 F.2d 180, 183 (2d Cir.1992); *Yellow Freight*, 948 F.2d at 106 n. 4. Nonetheless, the legal obligation of TDU and TRF to file additional reports, and the disclosability of their filed reports to nominated IBT candidates, remain unresolved, and we therefore proceed to the merits.

TDU and TRF contend on appeal that the filing and disclosure obligations that the Election Officer purported to impose upon them (1) violate the Election Rules; (2) are

not authorized by either the Consent Decree or the All Writs Act; and (3) violate the First Amendment rights of TDU, TRF, and their constituents. Because we rule against the Election Officer on the second of these grounds, we do not reach the constitutional issue. *See National Fuel Gas Distrib. Corp. v. TGX Corp.*, 950 F.2d 829, 834 (2d Cir.1991).

### A. *The Election Rules.*

TDU and TRF argue that the filing and disclosure requirements of the Election Rules are directed only to nominated candidates, a category that does not include either TDU or TRF. This view is clearly correct, and the issue thus posed, as we see it, is whether the Election Officer, by positing in the Campaign Advisory that "independent committees" like TDU and TRF are also subject to the filing and disclosure requirements, effected an unauthorized amendment of the Election Rules.

The Election Officer essentially concedes that an amendment occurred, asserting that "pursuant to his authority under the Election Rules, [he] took action to remedy this omission in the Election Rules [i.e., the failure to require independent committees to file reports subject to disclosure]." He points to various provisions in the Election Rules as supporting this action, including Article I thereof, which states that "[t]he Election Officer retains the right to interpret, enforce and amend these Rules when necessary."

▆ TDU and TRF respond that the Election Rules were initially approved by a court ruling, *see Election Rules Decision*, 931 F.2d at 184–90, and accordingly can only be similarly amended. We are unpersuaded. The initial approval resulted from an application by the Independent Administrator prompted by (1) challenges to the Election Officer's authority to promulgate any rules; (2) objections to specific provisions of the rules; and (3) claims by IBT affiliates that in any event, they could not be subjected to the rules. *See id.* at 181–82. For the most part, we rejected these challenges and approved the Election Rules. *See id.* at 184–90. That approval

encompassed the provision in Article I of the Election Rules authorizing the Election Officer to amend them. Further, paragraph 12 of the Consent Decree generally empowered the Election Officer to "supervise" the 1991 IBT election, which occurred on a relatively exigent timetable. We conclude that the Election Officer had the authority to amend the Election Rules without court approval, as he explicitly or implicitly did in the provisions of the Campaign Advisory regarding independent committees.

## B. *The Consent Decree.*

TDU and TRF are not parties to the Consent Decree. The government asserts that both are nonetheless subject to the Election Officer's supervisory authority because TDU is an organization that consists of IBT members, and TRF is dedicated entirely to promoting the interests of IBT members, invoking the *Election Rules Decision*, 931 F.2d at 186–87. In that case, we bound IBT affiliates to the Consent Decree "insofar as the election of ... IBT officers is concerned" because "the legitimate interests of the Affiliates were 'adequately represented by [the IBT]'" when the Consent Decree was negotiated. *Id.* at 185 (quoting *Hansberry v. Lee*, 311 U.S. 32, 43, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940)).

Unlike affiliated IBT locals, however, whose authority is derived from their hierarchical association with the international union, *see id.* at 186, TDU and TRF are independent entities. This very independence, of course, is what provoked the Election Officer to demand disclosure from them. Further, the interests of TDU and TRF traditionally have not coincided with those pursued by the incumbent international union leadership that negotiated the Consent Decree. Rather, TDU and TRF's interests have more closely coincided with the government's concerns regarding the promotion of union democracy and termination of union corruption.

It follows that TDU and TRF were not adequately represented by the IBT leadership with respect to the Consent Decree, and cannot be directly bound by its provisions. *See Commercial Carriers*, 968 F.2d at 1475–76; *Yellow Freight*, 948 F.2d at 102. The resulting question presented here, as in *Commercial Carriers* and *Yellow Freight*, is whether the All Writs Act authorized the Election Officer, in his capacity (generated by the Consent Decree) as an officer of the district court, to undertake the action challenged on this appeal.

## C. *The All Writs Act.*

The All Writs Act provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a) (1988).

*Yellow Freight* establishes that the All Writs Act may be invoked in aid of the effectuation of the Consent Decree and the Election Rules promulgated thereunder. *See* 948 F.2d at 102–05. In both *Yellow Freight* and *Commercial Carriers*, however, we concluded that the attempted application of the All Writs Act to nonparties by the Election Officer should be invalidated because, considering applicable federal labor law, the action taken by the Election Officer was not "agreeable to the usages and principles of law." *See Commercial Carriers*, 968 F.2d at 1476–77; *Yellow Freight*, 948 F.2d at 106–08.

It seems clear to us that the same conclusion is required here. In both *Yellow Freight* and *Commercial Carriers*, it could at least be plausibly contended that the challenged decision by the Election Officer was in accord with federal labor law and reached the same result that would have eventuated if the matter had been adjudicated before the National Labor Relations Board in an unfair labor practice proceeding. Here, however, no federal law is even arguably applicable.

The government noted at oral argument the analogy provided by federal election laws requiring disclosure reports by independent committees impacting upon campaigns for election to federal public office. There can be no suggestion, however, that

this federal law applies by its terms here. Accordingly, this is a much weaker case for application of the All Writs Act than *Commercial Carriers* or *Yellow Freight*, in both of which we nonetheless found the Election Officer's rulings to be without foundation in that statute.

The government asserts, distinguishing *Yellow Freight*, that TDU and TRF were much more directly and intensively involved in the 1991 IBT election than was the appellant employer in *Yellow Freight*, and for this reason should be subjected to the Election Officer's supervisory authority. TDU and TRF consistently agreed, however, to provide the Election Officer with any information he needed to determine whether they were engaging in any violation of the Consent Decree or applicable federal law. We therefore need not, and do not, address the question whether, in the absence of their voluntary compliance, the All Writs Act would authorize the Election Officer to compel disclosure of the relevant information. The issue is doubly moot because, as TDU and TRF pointed out at oral argument, the government could probably elicit this information from them by discovery in the underlying litigation.

The government also argues that *United States v. New York Telephone Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977), calls for affirmance. In that case, the Supreme Court approved a court order requiring a telephone company "to provide federal law enforcement officials the facilities and technical assistance necessary for the implementation of [the court's] order authorizing the use of pen registers to investigate offenses which there was probable cause to believe were being committed by means of the telephone." *Id.* at 161, 98 S.Ct. at 366 (footnote omitted). In so ruling, the Court said:

> The power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice.

*Id.* at 174, 98 S.Ct. at 373 (citations omitted).

Here, however, TDU and TRF voluntarily agreed to undertake everything reasonably necessary, in our view, to avert any frustration of the Consent Decree, or of the proper administration of justice. The Election Officer seeks, in addition, to implement his personal notions of union democracy and fair play by imposing upon nonparties to the Consent Decree filing requirements, and especially obligations of disclosure to third parties, not warranted by any applicable provision of law.

In the words of the All Writs Act, we deem this effort neither "necessary or appropriate in aid of" the Election Officer's discharge of his responsibilities as an officer of the district court, nor "agreeable to the usages and principles of law."

### Conclusion

Given the present posture of this litigation, it would be pointless to direct the district court to grant the preliminary injunction initially sought by TDU and TRF. We therefore reverse the order denying that injunction, and remand for further proceedings not inconsistent with this opinion.